IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:21-CR-00274 |
| v. | (Chief Judge Brann) |
| JAMES LAMPLEY, | |
| Defendant. | |

**MEMORANDUM OPINION**

JULY 19, 2022

After a July 2021 search of Defendant James Lampley's home uncovered a loaded Mossberg 12 gauge shotgun, a loaded silver Taurus Judge pistol with an obliterated serial number, and multiple rounds of ammunition,[1] a Grand Jury indicted him for (1) possession of firearms and ammunition by a felon[2] and (2) possession of a firearm with an obliterated serial number.[3] Lampley pled not guilty and moved to suppress this evidence.[4] In doing so, he requested a *Franks* hearing, citing the warrant-requesting State Trooper's failure to disclose material information about the Confidential Informant.[5] The Court granted his request and held a hearing on May 25, 2022.

---

[1] Doc. 1 at 1–2.
[2] 18 U.S.C. § 922(g).
[3] 18 U.S.C. § 922(k).
[4] Doc. 33. Lampley also moved to reveal the identity of the Confidential Informant. Doc. 32; Doc. 32-2. That motion is now moot, as the government concurred in the motion and confirmed the informant's identity. Doc. 37.
[5] Doc. 34; Doc. 40; *see Franks v. Delaware*, 438 U.S. 154 (1978).

After careful consideration, however, Lampley's motion to suppress is denied. My reasoning follows.

## I.     FACTUAL BACKGROUND

### A.     The Warrant Affidavit

The firearms- and ammunition-revealing search was executed under a warrant issued at 8:46 p.m., July 21, 2021, by the Honorable Nancy L. Butts, President Judge of the Court of Common Pleas of Lycoming County, Pennsylvania.[6] And its basis was Pennsylvania State Trooper Jonathan Thompson's affidavit.[7] In it, Thompson details his experience as an officer, includes boilerplate paragraphs describing the habits of drug traffickers, notes that Lampley had been convicted of burglary in New Mexico, and—most importantly—describes the information he received from the Informant:[8]

> On 7/21/2021 I was contacted by CI # 2410-21-052 who related that he/she knew James LAMPLEY who resides at 629 second avenue, Williamsport City, Lycoming county was a person enumerated as a person not to possess and was in possession of multiple stolen firearms. He/She related that they had seen at least three firearms in his possession in the past month.  He/She then sent me photos of a loaded Taurus handgun with obliterated serial numbers that they had related was in LAMPLEY's dresser draw at the time of the photo; 1639hrs 7/21/21.  They further related that they have observed (2) long guns one being in a plastic case in LAMPLEY's closet and one wrapped in fabric in the attic of the residence on this day.[9]

---

[6]     Doc. 34-1 at 1.
[7]     *Id.* at 2–7.
[8]     *Id.* at 3–4.
[9]     *Id.* at 4 (errors in the original).

Lampley's argument, however, largely rests on what Thompson's affidavit omitted: the Informant used methamphetamine, faced drug and fraud charges, and knew that she may receive favorable treatment in exchange for helpful information.[10] These and other issues were explored at the hearing.

### B. Trooper Thompson's Explanation

In Thompson's telling, his handling of the matter aligned with department policy.[11] And that started with the Informant's intake. At the recommendation of the two troopers who had carried out Lampley and the Informant's December 2020 traffic stop, which resulted in drug charges, Thompson reached out to the Informant to see if she was interested in helping the Police Department.[12] The Informant was; and not long after, she, Thompson, and another Trooper met.[13] During their meeting, Thompson and his colleague worked through a Department debriefing questionnaire, detailing for her the role of an informant (providing actionable information, participating in police-sanctioned drug buys, and testifying in court) and its potential benefits (a lighter sentence and financial compensation).[14] But for the latter, the duo made clear that neither reward was guaranteed and, in particular, that her sentence rested in the hands of the District Attorney, not their own.[15]

---

10   Doc. 40 at 2–3.
11   Doc. 52 at 51:8–52:16.
12   *Id.* at 16:4–17, 17:6–19.
13   *Id.* at 19:2–24.
14   *Id.* at 19:25–22:10.
15   *Id.* at 22:24–24:15.

The Informant expressed an interest and initially tried to provide information, yet nothing she gave was actionable. And for many months that remained the case.[16] But by the summer, her efforts intensified. In mid-July 2021, she asked to meet again, this time at the Montoursville Police Station.[17] According to Thompson, she arrived "with blackened eyes" and "concern[] for her safety.[18] But the information she provided about Lampley was stale, and she refused to cooperate in the Department's domestic violence investigation.[19]

A week later, she tried again. This time, following up on her earlier, nonactionable tip about Lampley not being allowed to own a gun, she contacted Thompson to tell him that Lampley possessed stolen firearms.[20] Across text messages, picture messages, and a phone call, the Informant asserted that she had seen three guns in his home—including two long guns. And she further placed two of them for Thompson: one of his long guns was in the attic in a green package, she said, while his handgun was in his dresser drawer.[21]

At the hearing, Thompson explained that after receiving these messages, he asked the Informant to send him additional photos of the handgun—directing her to

---

[16]   *Id.* at 27:18–28:5.
[17]   *Id.* at 28:6–24.
[18]   *Id.* at 29:2–6.
[19]   *Id.* at 27:9–30:2.
[20]   *Id.* at 76:8–10, 30:7–31:2.
[21]   *Id.* at 30:7–31:2. As a comparison between the affidavit and the results of the search make plain, the Informant incorrectly believed that a search would uncover a second long gun that Lampley kept in his closet, wrapped in plastic.

hold the gun in a specific manner so that he could see the serial number (which had been obliterated) and confirm that it was a fresh photo.[22] And he also described the steps he took to confirm Lampley's statement to the Informant that he was not allowed to possess a firearm. He first ran Lampley's criminal history, which revealed a New Mexico felony burglary charge.[23] But because the report did not include the disposition, he then contacted the Clovis, New Mexico Police Department, who told him that it was a commercial burglary charge and directed him to an online database where he could access the full report.[24] Thompson's search on this site showed that Lampley had pled "guilty/no contest" to "burglary (commercial/automobile)," a New Mexico felony.[25] And so, after discussing the information that he had gleaned with an assistant district attorney,[26] he added to the affidavit that this conviction amounted to a felony burglary under Pennsylvania law—a conclusion that Lampley has since attacked.[27]

This information constituted the essence of Thompson's affidavit. But it did not constitute the entirety of Thompson's knowledge about the Informant. As Lampley emphasizes, the affidavit does not provide information about her reliability.

---

[22] *Id.* at 31:3–32:9.
[23] *Id.* at 34:20–35:18.
[24] *Id.* at 35:19–36:23.
[25] *Id.* at 36:24–37:11.
[26] *Id.* at 88:14–90:12.
[27] Doc. 34-1 at 4 ("I obtained a copy of LAMPLEY's criminal history from New Mexico in which he is document to have been convicted of a Burglary charge on 09/26/2011 an equivalent to a conviction of the enumerated section PA 18-3502 (burglary) under PA 18 6105 (A)(1)."); *see* Doc. 40 at 5, n.3; Doc. 54 at 7, 14–15; *see also* Doc. 52 at 82:7–90:18.

It says nothing about the Informant's relation to him, how she was able to take photograph his gun while inside his home, or why Thompson trusted her information.[28] Nor does it include that she was a methamphetamine user; that she had a set of open charges—one from the traffic stop and another for access device fraud; or that she had signed a confidential informant agreement, which provided that she may receive compensation and time off her sentence for providing actionable information.[29]

When asked about her reliability, Thompson acknowledged these details' absence and said that he had not included the information because the Informant had never assisted in another case (though he did not explain why he failed to include that she was in a relationship with Lampley and had a child with him).[30] For the drug- and cooperation-related facts, meanwhile, Thompson stated that he simply did not believe that they were relevant to the probable cause determination—a belief that he continued to hold after discussing the affidavit with an assistant district attorney.[31] The Informant's drug use, as he saw it, was not a concern because she had not appeared to be under the influence in his meetings with her.[32] And in his mind, the fact that she had open charges and could receive time off her sentence and

---

[28] Doc. 54 at 9.
[29] *Id.* at 13; *see* Doc. 52 at 33:9–34:10 (describing the Informant's second charges stemming from her use of a friend or someone else's credit card at a Dairy Queen).
[30] Doc. 52 at 95:7–18, 94:9–95:6.
[31] *Id.* at 42:13–44:13, 51:8–52:17.
[32] *Id.* at 43:4–44:13.

renumeration for her assistance was likewise unimportant. As Thompson explained, he assumed that the Judge knew that the Informant had a record given that she was labeled a Confidential Informant and not a Confidential Source—a categorization reserved for individuals facing charges, and one that requires the County President Judge's signature, rather than a Magisterial District Judge's.[33] And he further emphasized that neither compensation nor sentencing relief was guaranteed. Indeed, his $100 payment to the Informant was only made days after she provided information that resulted in an arrest, and she received no sentence-related promises from the District Attorney's Office.[34]

## II.  ANALYSIS

Lampley levels two arguments in his motion to suppress the evidence uncovered by the July 2021 search. First, he contends that the affidavit lacks probable cause on its face because it provides no information about the Informant or the basis of her knowledge. And second, he claims that even if the affidavit established probable cause, it is invalid because Thompson recklessly omitted and included probable cause-altering information about the Informant. Neither succeeds.

For a reviewing court, probable cause is established when, "viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence

---

[33]  *Id.* at 46:14–54:7.
[34]  *Id.* at 57:1–62:1, 54:24–55:23.

of a crime will be found in a particular place.'"[35] As the Supreme Court has explained, "[p]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."[36] This reluctance towards rigidity is why, while courts are to consider informants' "basis of knowledge" and the existence of facts establishing their "veracity" or "reliability," "these elements should [not] be understood as entirely separate and independent elements to be rigidly applied in every case."[37] Instead, "a deficiency in one [element] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability."[38]

Lampley's omission- and commission-centered theories are but a variant of this assessment. Under *Franks v. Delaware*,[39] to defeat an affidavit based on an omission, he must prove "(1) that the police recklessly omitted information from a warrant affidavit, and (2) that the determination of probable cause hinged on the omitted material."[40] To determine whether the omitted information was "material, or necessary, to the finding of probable cause,"[41] a court must "insert the missing

---

[35] *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1978)).
[36] *Gates*, 462 U.S. at 232.
[37] *Id.* at 230.
[38] *Id.*
[39] 438 U.S. 154 (1978).
[40] *United States v. Sanchez*, 246 F. App'x 803, 805 (3d Cir. 2007).
[41] *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997).

information, and then examine whether or not the 'corrected' warrant affidavit would establish probable cause."[42] For commissions, meanwhile, "a court must excise the false statement from the affidavit" and then likewise determine whether probable cause still exists.[43]

To begin with, I cannot say that Judge Butts lacked a substantial basis to conclude that there was "a fair probability that contraband or evidence of a crime" would be found in Lampley's home.[44] Thompson's affidavit shows that the Informant had known Lampley at least a month and was close enough to him to know that he illegally possessed firearms—in fact, so close as to have been able to describe where he kept the guns, to detail their type and packaging, to say that one lacked a serial number, and to photograph one of them.[45] In response, Lampley argues that "Thompson took no action to corroborate the value of the photograph," contending, for instance, that he "was not surveilling 629 Second Avenue at the time of the photograph to confirm that the [Informant] was in the residence when the photograph was taken."[46] But in the Court's view, this argument is simply an attempt to raise the bar to a height that the Government's conduct cannot clear. The information was particularized, evidenced intimate knowledge, and was backed by an hours-old photo. This combination—and in particular, Thompson's assertion that

---

[42] *Sanchez*, 246 F. App'x at 805 (citing *United States v. Yusuf*, 461 F.3d 374, 384 (3d Cir. 2006)).
[43] *Mulvihill*, 113 F.3d at 400.
[44] *See Gates*, 462 U.S. at 238.
[45] Doc. 34-1 at 3.
[46] Doc. 54 at 4.

he had recently received this photo—provide a sufficient basis for Judge Butts' determination.

This finding is unaltered when the Court adds in and excises the information that Lampley claims is material.[47] To start, I do not believe this finding would be any different if Judge Butts knew that the Informant faced criminal charges, had used methamphetamine, and could benefit from providing information. Put simply, this is not a case of a methamphetamine addict facing drug and fraud charges casting blind aspersions, hoping that one might hit. Nor is it, as Lampley suggests, *United States v. Glover*,[48] where the informant had active gang ties, a six-year record of paid police assistance, fourteen criminal convictions (including four while an informant), and a history of trying to deceive the police.[49] By contrast, the Informant faced two minor charges (drug possession and access device fraud); there is no evidence that her drug use was debilitating or in some other way rendered her untrustworthy; and

---

[47] This finding finishes off Lampley's *Franks* claim without any need to delve into whether Thompson was reckless. Though I'll add that Lampley has failed to uncover sufficient evidence on this front as well. Thompson's testimony shows that he followed department policy; that he consulted an assistant district attorney about the affidavit; and that he believed that the omitted information was irrelevant, that Judge Butts would have known that the Informant had a record, and that there was a basis for Lampley being unable to possess a firearm under Pennsylvania Law. Doc. 52 at , 95:7–18, 94:9–95:6, 42:13–44:13, 46:14–54:7, 36:1–38:7, 82:7–90:18. Lampley argues that Thompson's statement about omitting information that "doesn't provide probable cause" is an admission that he intentionally omits facts that harm his case. Doc. 54 at 13 (citing Doc. 52 at 42:17). But in the Court's view, this is a strained reading of a record that, when analyzed in context, shows Thompson trying to articulate that he did not include the information because it did not move the needle one way or the other and was unrelated to the question of whether a search of Lampley's home would reveal evidence of crimes. *See* Doc. 52 at 42:17–18.

[48] 755 F.3d 811 (7th Cir. 2014).

[49] *Id.* at 815.

the record shows that she knew that payment or time off her sentence could only come through accurate information—and even then, neither was guaranteed. If this information inches past irrelevance, it still does not defeat the reliability provided by an hours-old photograph of a gun with an obliterated serial number.[50]

The same can be said of Thompson including, without being certain in hindsight, that Lampley's New Mexico conviction was the equivalent of a Pennsylvania felony.[51] As the Court sees it, Judge Butts' assessment neither rose nor fell on Thompson's assessment of the law. Possessing a gun with an obliterated serial number is an independent crime. And to the extent that Lampley suggests a different result for the long gun that was not photographed, the Court finds that because the affidavit contained strong evidence that one gun had been stolen, Judge Butts could have also concluded that there was a reasonable probability that the search would uncover the additional stolen weapons identified by the Informant.

### III.   CONCLUSION

In moving to suppress the two firearms and ammunition uncovered during the July 2021 search of his home, Lampley has put the Government through its paces. But further inspection of the warrant and the information used to support it only

---

[50]   *See Gates*, 462 U.S. at 234 ("Even if we entertain some doubt as to an informant's motive, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand entitles his tip to greater weight than might otherwise be the case.").

[51]   Doc. 52 at 82:7–90:18.

confirms Judge Butts' initial determination. Lampley's motion to suppress is therefore denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge
